## ANDERSON v. COMMISSIONER OF INTERNAL REVENUE.

### PRICHARD v. SAME.

### OLSEN v. SAME.

#### Nos. 1870–1872.

Circuit Court of Appeals, Tenth Circuit.

Nov. 1, 1939.

Charles H. Garnett, of Oklahoma City, Okl., for petitioners.

Joseph M. Jones, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

On March 19, 1931, Oklahoma City Company,[1] a corporation, entered into a written contract with L. H. Prichard. It recited that the Oklahoma Company was the owner of certain oil lands and royalties, working interests, and deferred oil payments in lands situated in Oklahoma County, Oklahoma; that the Oklahoma Company desired to sell and Prichard desired to purchase such properties. It pro-

---

[1] Hereinafter referred to as the Oklahoma Company.

vided that for and in consideration of the sum of ten dollars the Oklahoma Company should deliver to Prichard "good and valid instruments conveying to" Prichard the properties described in the contract, together with abstracts of title thereto certified to date, and certified copies of the contracts covering the working interests and oil payments; that on approval of such abstracts and contracts by Prichard's attorneys, Prichard should pay to the Oklahoma Company $50,000 in cash; that the Oklahoma Company should have and receive one-half the proceeds received by Prichard from the sale of oil and gas from such properties, and from the sale of any of the lands conveyed to him, until the Oklahoma Company had received $110,000 with interest at the rate of six per cent per annum from the date of the contract; that the Oklahoma Company should have a first lien against one-half of all oil and gas produced from the properties and on one-half of the lands conveyed to secure the payment of the $110,000, but that such lien should not affect the other one-half interest in the oil and gas produced and the lands conveyed; that purchasers of oil and gas, including pipe line companies, should make payments directly to Prichard; that Prichard should make payment of one-half of the revenues derived from the sale of oil, gas, and lands at the end of 90-day periods commencing May 25, 1931, by depositing same to the credit of the Oklahoma Company in the Tradesmen's National Bank of Oklahoma City, Oklahoma, with full, complete, accurate, and itemized statements of such receipts; and that a release should be placed in escrow in such bank, and upon the payment of the $110,000, with interest, it should be delivered by the bank to Prichard.

Immediately upon the execution of the contract the properties and interests described therein were conveyed and transferred to Prichard.

On March 23, 1931, Prichard entered into a contract with the Oil Brokerage and Investment Company,[2] a corporation, whereby, in consideration of $50,000, Prichard assigned and conveyed to the Investment Company an undivided one-half interest in the properties and interests described in the Prichard-Oklahoma Company contract. The contract with the Investment Company provided that it should receive all the revenues from such properties and interests payable to Prichard under the Prichard-Oklahoma Company contract until the Investment Company had received the sum of $50,000, and that after such sum had been paid the Investment Company and Prichard should each own an undivided one-half interest in such properties and interests, and that Prichard should execute and deliver to the Investment Company good and sufficient instruments conveying to it an undivided one-half interest in such properties and interests. It further provided that in the event the revenues from such properties were not sufficient to reimburse the Investment Company for the $50,000 advanced by it, Prichard should pay to the Investment Company one-half of the difference between the revenues produced and the sum of $50,000. Prichard used the $50,000 obtained from the Investment Company to make the cash payment to the Oklahoma Company.

In the transactions, Prichard acted for himself and for Anderson and Olsen. Their respective shares in the properties and interests were set forth in a declaration of trust dated March 23, 1931, as follows: Prichard, 45 per cent; Anderson, 45 per cent; and Olsen, 10 per cent.

During the years 1931 and 1932 Prichard received all the proceeds from sales of oil and gas produced from the properties. The gross proceeds in 1931 amounted to $55,833.70. Prichard paid one-half of that amount to the Oklahoma Company and one-half to the Investment Company. The gross proceeds in 1932 were $81,547.15. Prichard paid one-half thereof to the Oklahoma Company, $23,695.91 to the Investment Company, and distributed the remainder as follows: Investment Company, 50 per cent; Anderson, 22½ per cent; Prichard, 22½ per cent; and Olsen, 5 per cent.

Prichard reported as income from the sale of oil and gas produced from the properties acquired by him from the Oklahoma Company for the year 1932, $3,165.19. Anderson reported the same amount. Each deducted an allowance for depletion. The record does not disclose the amount reported by Olsen. The Commissioner increased the amount of income and proposed deficiencies as follows: Anderson, $2,724.91; Prichard, $1,918.60; and Olsen, $337.-

2 Hereinafter referred to as the Investment Company.

77. The Board of Tax Appeals approved the determinations of the Commissioner. These are petitions to review the decisions of the Board.

Petitioners contend that the Oklahoma Company reserved a legal or equitable interest in one-half of the lands and interests transferred to Prichard to the extent of $110,000, with interest, and that the payments made to the Oklahoma Company were not income to petitioners.

It will be observed that the Prichard-Oklahoma Company contract provided for the delivery to Prichard of good and valid instruments conveying to him the lands and interests described in the contract and made no provision for any reservation or exception in such instruments of conveyance; that the $110,000 was to be paid only out of proceeds derived by Prichard, both from the sale of oil and gas and from the sale of lands, and the contract made no provision for any partial release by the Oklahoma Company as sales of land were made by Prichard; that it made no express reservation to the Oklahoma Company of one-half of the oil and gas produced from the properties and made no provision for payment directly to it of the proceeds derived from sales of one-half of the oil, gas, and land, but on the contrary provided that such payments should be made directly to Prichard and that at 90-day intervals he should pay the amount due the Oklahoma Company by depositing same to its credit in the Tradesmens National Bank. It will be observed further that the contract provided for the payment of interest, reserved a lien upon one-half of the oil and gas and upon a one-half interest in the land to secure the payment of $110,000, with interest, and provided for the delivery of a release when such sum with interest had been fully paid. These provisions are wholly inconsistent with an intent to reserve any interest in the Oklahoma Company other than a lien on the properties or the proceeds derived therefrom. The Oklahoma Company could not retain title to property and at the same time reserve a lien thereon. The case of Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 912, 81 L.Ed. 1324, is distinguishable. There, Hammonds and Branson owned oil and gas leases on undeveloped lands in Texas which provided for a royalty of one-eighth. They assigned the leases to Faith Oil Company which, in taking the assignment, acted for itself to the extent of one-fourth and for Green and Perkins, principal owners of the stock of the company, to the extent of three-eighths each. Later, it transferred its interest to Perkins. The assignment provided for the payment of ten dollars cash and "$395,000.00 * * * out of the oil produced and saved from the * * * lands, and to be one-fourth of all the oil produced and saved." It further provided that the oil payments should be made directly to Hammonds and Branson, and that the $395,000 should be payable out of oil only and should not be a personal obligation of the assignee, its successors, or assigns. The instrument did not purport to reserve a lien. The court said:

"The provisions for payment to assignors in oil only, the absence of any obligation of the assignee to pay in oil or in money, and the failure of assignors to take any security by way of lien or otherwise unmistakably show that they intended to withhold from the operation of the grant one-fourth of the oil to be produced and saved up to an amount sufficient when sold to yield $395,000."

Thus, it will be observed that in Thomas v. Perkins, supra, no lien was reserved and payments were to be made directly by the pipe line company to Hammonds and Branson, whereas in the instant case, an unqualified conveyance was made, a lien was reserved, the right of Prichard to sell and convey was implied, and the proceeds derived from sales were to be paid directly to Prichard.

We conclude that the Oklahoma Company made no reservation of title, but merely provided for the payment of $110,000, with interest, out of one-half of the funds received by Prichard from the sale of oil, gas, and lands and reserved a lien on one-half of the oil and gas produced and on one-half the land to secure such payment. It follows that the proceeds derived by Prichard from the sale of oil and gas were income to petitioners.[3]

Under the contract between the Investment Company and Prichard the Investment Company advanced $50,000 to make the cash payment to the Oklahoma Company, the Investment Company was to receive one-half of the income from the properties until it was reimbursed for the

---

[3] Comar Oil Company v. Burnet, 8 Cir., 64 F.2d 965, 966; Helvering v. Elbe Oil Land Company, 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904.

advance, and Prichard assumed a personal obligation to the Investment Company to the extent of $25,000 of the amount advanced by it. The essence of the transaction was that the Investment Company paid $25,000 of the cash payment to the Oklahoma Company and advanced an additional $25,000 to Prichard. It follows that $25,000 of the amount of the proceeds paid to the Investment Company discharged a personal obligation of Prichard, and was income to petitioners.[4]

If the transaction be regarded as a sale by Prichard to the Investment Company for $25,000 of one-half of the lands and interests, and a loan to Prichard of $25,000, then Prichard received the exact amount which he paid for such one-half and realized no income therefrom.

Counsel for the government admit that $25,000 of the $50,000 paid to the Investment Company was not taxable against petitioners and assert that in fact it was so treated by the Board. On the other hand, the petitioners assert that the full $50,000 was in fact improperly taxed as income to them. We agree that $25,000 of the $50,000 was not taxable to petitioners, but whether it was so taxed we are unable to determine from this record.

Remanded with instructions to the Board to determine whether more than $25,000 of the amount paid to the Investment Company was assessed to petitioners, and in the event it was, to make redeterminations in accordance with this opinion. The decisions in all other respects are affirmed.

---

[4] Reynolds v. McMurray, 10 Cir., 60 F.2d 843.